UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>BRANDON WALTON,<br><br>          Defendant. | Case No.: 24-CR-1976-JO<br><br>**ORDER DENYING MOTION FOR PRETRIAL RELEASE**<br><br>**[Dkt. No. 23]** |

## I.

## INTRODUCTION

After stipulating to detention without prejudice following his initial appearance, defendant Brandon Walton moved to set conditions of release. Dkt. No. 23. The United States opposed the motion. Dkt. No. 27. The Court held a hearing on January 30, 2025, and issued an oral ruling denying the motion. This Order follows.

## II.

## BACKGROUND

On August 28, 2024, the United States filed a complaint charging Walton with sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) and (e). Dkt. No. 1. The complaint alleges, in relevant part, that Walton, a 35-year-old, began communicating with "JF2," a 15-year-old, in December 2023. Between December 2023 and March 2024,

1

Walton exchanged approximately 1,000 messages with JF2; provided JF2 with drugs, alcohol and money; and created multiple videos of himself engaging in sexual activity with JF2 and "JF1," a 13-year-old.

As described in the complaint and the United States' opposition brief, the relevant facts are summarized as follows:

On or about December 20, 2023, Walton began messaging with JF2. In an audio message, Walton said, "Well, I see that you're looking for a sugar daddy so basically I want play with you I wanna make you happy." Walton and JF2 agreed to meet, although JF2 stated that she was too short to drive. The following day, December 21, Walton and JF2 agreed to meet at Fashion Valley Mall. Walton told JF2 he wanted to "have fun and play" and told JF2 to wear "something sexy." In the early morning hours of December 22, 2023, Walton sent JF2 messages indicating they had met and engaged in sexual activity.

Later on December 22, Walton agreed to send JF2 money for concert tickets and an Uber to the concert. Walton also told JF2 he "just reupped on blow [cocaine]" and asked JF2 if she knew anyone "who wants blow or molly [MDMA]." Walton offered to split the profits from any drug sales with JF2.

On December 31, 2023, Walton and JF2 messaged about going to a party together, and Walton represented that he would bring "coke" and "weed" [marijuana]. JF2 told Walton that she was waiting for her family to go to sleep because she needed to sneak out of the house. In January 2024, Walton and JF2 exchanged multiple messages about whether she could skip school to hang out with him and how JF2's family was being "strict" with her because her grades were bad. On January 6, 2024, Walton asked JF2 if she was "gonna wanna do coke tonight?" JF2 replied yes, and Walton picked her up.

In late February 2024, Walton and JF2 exchanged messages about engaging in sexual activity with JF2 and her friend, JF1. They arranged to meet on February 28, 2024, and Walton told JF2 he would bring cocaine, MDMA and alcohol. On the morning of February 28, Walton paid for JF2's Uber to meet JF1.

///

In March 2024, JF2 sent Walton multiple videos of JF2 and JF1 engaging in sexual activity with Walton on February 28. A subsequent search of JF2's phone revealed 15 videos taken on February 28 depicting Walton engaged in sexual activity with JF1 and JF2. According to the complaint, both JF1 and JF2 appear to be under the influence in the videos.

### III.
### DISCUSSION

**A.    Legal Standards**

"Under the Bail Reform Act, pretrial detention is permitted only if a judicial officer determines that there is no condition of release, or combination of conditions, which would reasonably assure the appearance of the defendant and the safety of the community." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019). "On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). "A finding that a defendant is a danger to any other person or the community must be supported by clear and convincing evidence." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

Under 18 U.S.C. § 3142(e)(3), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure a defendant's appearance in court and the safety of the community where there is probable cause to believe the defendant committed an enumerated offence. *See* 18 U.S.C. § 3142(e)(3)(A)-(E). "Once this presumption is triggered, the defendant must produce some credible evidence forming a basis for his contention that he will appear and not be a threat to the community." *United States v. Marigny*, No. 20-MJ-70755-MAG-1, 2020 WL 4260622, at *1 (N.D. Cal. July 24, 2020) (citation omitted). "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in [18 U.S.C] § 3142(g)." *Hir*, 517 F.3d at 1086 (citation omitted).

"Although the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government." *Id.* As the Ninth Circuit explained in *Hir*:

> If a defendant proffers evidence to rebut the presumption of dangerousness, the court considers four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged []; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

*Id.* (citing 18 U.S.C. § 3142(g)).

## B. Analysis

Probable cause exists to believe that Walton violated 18 U.S.C. § 2251 by recording his sexual activity with JF1 and JF2. Dkt. No. 1. As such, there is a rebuttable presumption that no combination of conditions will reasonably assure his appearance in court and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(E). The Court assumes, for purposes of this Order, that Walton has proffered evidence sufficient to rebut the presumption given his longstanding ties to San Diego, his family support and his willingness to participate in a residential substance abuse treatment program. Dkt. No. 23-1 at 14. Although rebutted, "the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Hir*, 517 F.3d at 1086.

First, the nature and circumstances of the offense demonstrate a likelihood that Walton will pose a danger if released on bond. 18 U.S.C. § 3142(g)(1). Walton's offense involves two minor victims. *See id.* (court must consider "the nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim"). "The fact that [Walton's] alleged crime involves a minor victim is something of which the detention statute instructs the court to take notice." *United States v. Powell*, No. 4:21-CR-

00290-BLW, 2022 WL 769479, at *3 (D. Idaho Mar. 14, 2022) (affirming detention order based on dangerousness where defendant was charged with sexual exploitation of a minor and receipt of child pornography). The evidence proffered by the United States demonstrates that over the course of more than two months, Walton engaged in a concerted and persistent effort to engage in sexual activity with JF2. Those efforts involved Walton holding himself out as JF2's "sugar daddy," a role that included him giving JF2 money, drugs and alcohol in exchange for sexual favors. During this time period Walton exchanged approximately 1,000 messages with JF2, including explicit references to using drugs with JF2 and engaging in sexual activity with her. Moreover, the evidence indicates that when JF2 suggested that Walton meet JF1, he immediately agreed to the proposal, gave them drugs and created multiple videos of his sexual activity with both minors. After JF2 sent him the videos, Walton suggested he would post them on the internet to make money. Finally, it appears Walton's communications with JF2 ceased only when JF2 informed Walton she was with someone else, indicating that Walton would have continued to engage in a sexual relationship with JF2 while providing her with drugs, alcohol and money had she been willing to do so.

Second, the weight of the evidence is strong. 18 U.S.C. § 3142(g)(2). The complaint describes numerous messages between Walton and JF2 as well as the 15 videos that were recovered from JF2's cell phone and that document Walton's efforts to engage in sexual activity with JF2 and JF1. The weight of the evidence favors detention, although it is the least important factor. *Hir*, 517 F.3d at 1090.

Third, "the nature and seriousness of the danger to any person or the community that would be posed by [Walton's] release" is substantial. 18 U.S.C. § 3142(g)(4). The charge against Walton involves "crimes against minor victims – victims who are especially vulnerable and unable to defend themselves. This heightens the danger posed to the community." *United States v. Brugnoli-Baskin*, No. 2:22-MJ-00499-MAT-LK, 2022 WL 16636429, at *5–6 (W.D. Wash. Nov. 2, 2022); *Marigny*, 2020 WL 4260622, at *4 ("the potential further commission of similar offenses against minor victims poses a grave risk

to potential victims and the community at large"). Moreover, Walton's pursuit of sexual activity with JF2 occurred over a period of months and involved Walton encouraging JF2 to skip school and sneak away from her family home at night to use drugs and have sex with him. Given this course of conduct and the evidence establishing that Walton did, in fact, provide JF2 and JF1 with drugs and alcohol in exchange for engaging in sexual activity with him, Walton's release from custody would pose a danger to minors he might target, including JF2 and JF1.

The Court also must consider Walton's personal characteristics, community ties, history of drug use and "record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3). Certain of these factors weigh in favor of setting conditions of release. Walton has strong family support, as evidenced by his family members' presence at the motion hearing. He has resided in the San Diego area for much of his life, with the exception of time spent living with his grandmother in Mexico. His criminal history is not aggravated, and he does not have a history of failing to appear in court. Walton has an admitted "severe cocaine use disorder and severe alcohol use disorder," although he is willing to participate in residential substance abuse treatment. Dkt. No. 23-1 at 14. The Court has given Walton's history and characteristics "serious consideration" but is "not persuaded, however, that they overcome the strength of the factors pointing to [his] dangerousness" given his course of conduct with JF2 and JF1 between December 2023 and March 2024. *Hir*, 517 F.3d at 1091 (concluding that defendant's "history as a law-abiding citizen and his significant ties to the local community do not outweigh the extremely serious nature of the offenses with which he is charged" as well as "the weight of the evidence against him, and the nature and gravity of the danger that would be posed by his release"). Moreover, the record does not demonstrate how residential substance abuse treatment would address Walton's pursuit of sexual activity with minors and his willingness to trade drugs and alcohol for sexual favors.

"Even where a defendant poses a danger, he must still be released if there is a 'condition or combination of conditions [that] will reasonably assure . . . the safety of any

other person and the community.'" *Id.* at 1091-92 (quoting 18 U.S.C. § 3142(e)).  Walton contends that "[i]n addition to the standard terms [and] conditions routinely imposed in this District, the addition of drug and alcohol treatment and testing along with the conditions required by the Adam Walsh Act" will reasonably assure his appearance in Court and the safety of the community.  Dkt. No. 23-1 at 15-16.  However, the conditions that might protect the community – including that Walton not use a cellular telephone or other electronic communication device and that he avoid contact with minors – "necessarily depend[] on [his] good faith compliance." *Hir*, 517 F.3d at 1093.  The Court finds there is no combination of conditions would adequately mitigate the danger posed by Walton's potential access to minor children and to electronic devices.  *See United States v. Aiad-Toss*, No. 4:19-CR-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020) (although location monitoring "may offer useful information about where [the defendant] is, it would provide little useful information about what he is doing," and "[t]he ready accessibility of smart phones and digital communication devices would make it all too easy for him to commit the same types of crime(s) that he is accused of committing with other young, vulnerable girls").

## IV.
## CONCLUSION

For all the foregoing reasons, the Court finds the United States has met its burden to show by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of others and the community if Walton is released on bond.  The motion for pretrial release is DENIED.

**IT IS SO ORDERED**.

Dated:  February 7, 2025

_____
Honorable David D. Leshner
United States Magistrate Judge